**2024-1370, 2024-1371**

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**SWEET HARVEST FOODS, EXPORT PACKERS COMPANY LTD., HONEY HOLDING I, LLP, DBA HONEY SOLUTIONS, SUNLAND TRADING, INC., NATIONAL HONEY PACKERS & DEALERS ASSOCIATION,**

**Plaintiffs-Appellants,**

**v.**

**UNITED STATES, AMERICAN HONEY PRODUCERS ASSOCIATION, SIOUX HONEY ASSOCIATION,**

**Defendants-Appellees.**

---

**Appeals from the United States Court of International Trade in Nos. 1:22-cv-00188-LMG, 1:22-cv-00189-LMG, 1:22-cv-00191-LMG, 1:22-cv-00192-LMG, 1:22-cv-00194-LMG, Senior Judge Leo M. Gordon**

---

**BRIEF OF DEFENDANTS-APPELLEES AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION**

R. ALAN LUBERDA
KATHLEEN W. CANNON
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendants-Appellees

**July 19, 2024**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 2024-1370, 2024-1371 |
| **Short Case Caption** | Sweet Harvest Foods v. United States |
| **Filing Party/Entity** | Defendants-Appellees American Honey Producers Association, Sioux Honey Association |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 07/19/2024

Signature: /s/ Melissa M. Brewer

Name: Melissa M. Brewer

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| American Honey Producers Association, Sioux Honey Association | N/A | N/A |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)     ☑ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# Table of Contents

Page

STATEMENT OF RELATED CASES ..................................................................1

STATEMENT OF THE CASE ............................................................................2

SUMMARY OF THE ARGUMENT ..................................................................11

ARGUMENT .....................................................................................................12

I.     THE COMMISSION'S ANALYSIS OF THE STATUTORY FACTORS DEFINING CRITICAL CIRCUMSTANCES WAS IN ACCORDANCE WITH LAW ................................................................12

     A.     The Commission's Critical Circumstances Determination Was Based on Three Statutory Prongs, Two of Which Appellants Ignore ...........................................................................13

     B.     The Commission Properly Analyzed Whether There Had Been a "Rapid Increase" in Inventories as the Statute Requires, Not Whether "Current" Inventory "Levels" Are Significant ..................................................................................18

     C.     The Period the Commission Selected to Analyze Import Volume and Inventory Increases Comports with Law.......................22

     D.     Appellants' Proposed Reading of the Statute Is Not Only Inconsistent with the Plain Statutory Language But Would Undermine the Statute's Purpose ............................................27

II.     THE COMMISSION'S AFFIRMATIVE CRITICAL CIRCUMSTANCES DETERMINATION IS SUPPORTED BY SUBSTANTIAL RECORD EVIDENCE.......................................................28

     A.     The Record Is Not "Missing" Any Data Necessary to the Critical Circumstances Analysis .........................................29

     B.     Appellants' Claim That The Commission Ignored Record Evidence Is Belied by the Agency's Findings ....................................33

Table of Contents
(continued)

Page

III.    CONCLUSION.................................................................................................37

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), this brief contains confidential material that has been omitted. The material omitted on pages 7, 8, 33-36 is names of companies that were suppliers and/or customers during the investigation and whose names were omitted from the US International Trade Commission's findings as confidential. Pages 33-34 includes company-specific data contained in questionnaire responses that was omitted from the US International Trade Commission's findings as confidential. Page 34 includes relative numerical data regarding the purchasers that submitted questionnaire responses and that data omitted from the US International Trade Commission's findings as confidential.

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Boomerang Tube LLC v. United States*,
856 F.3d 908 (Fed. Cir. 2017) ..............................................................31

*ICC Industries, Inc. v. United States*,
632 F. Supp. 36 (Ct. Int'l Trade 1986), *aff'd*, 812 F.2d 694
(Fed. Cir. 1987) ....................................................................................14

*ICC Industries, Inc. v. United States*,
812 F.2d 694 (Fed. Cir. 1987) .......................................................4, 14

*Loper Bright Enterprises, Inc. v. Raimondo*,
Appeal No. 22-451, 603 U.S. __ (June 28, 2024) .............................22

*Mexichem Fluor Inc. v. United States*,
179 F. Supp. 3d 1238 (Ct. Int'l Trade 2016) .....................................32

*MTD Products, Inc. v. United States*,
Slip Op. 23-34, 2023 Ct. Int'l Trade LEXIS 37 (Mar. 16, 2023)......26

*Nan Ya Plastics Corp. v. United States*,
810 F.3d 1333 (Fed. Cir. 2016) .........................................................30

*Sichuan Changhong Elec. Co. v. United States*,
460 F. Supp. 2d 1338 (Ct. Int'l Trade 2006) .....................................14

*Zenith Elecs. Corp. v. United States*,
988 F.2d 1573 (Fed. Cir. 1993) .........................................................35

**Statutes and Regulations**

19 U.S.C. § 1671b(e)(2).................................................................................4

19 U.S.C. § 1673 ...........................................................................................2

19 U.S.C. § 1673b(a)(1)(A) ..........................................................................2

19 U.S.C. § 1673b(b)(1)(A) ................................................................2

19 U.S.C. § 1673b(d)(1)-(2) ..............................................................3

19 U.S.C. § 1673b(e) ..............................................................4, 5, 14, 15

19 U.S.C. § 1673d ................................................................................2

19 U.S.C. § 1673d(a)(3) ......................................................................5

19 U.S.C. § 1673d(b)(1) ......................................................................2

19 U.S.C. § 1673d(b)(4)(A) ......................................................5, 13, 18

19 U.S.C. § 1673d(b)(4)(A)(i) ............................................................3

19 U.S.C. § 1673d(b)(4)(A)(ii) ....................................................4-5, 14

19 U.S.C. § 1673d(b)(4)(A)(ii)(I) ......................................................6

19 U.S.C. § 1673d(b)(4)(A)(ii)(II)................................................*passim*

19 U.S.C. § 1673d(b)(4)(A)(ii)(III) ..................................................21

28 U.S.C. § 2637(d) ..........................................................................31

**Legislative**

H.R. Rep. No. 317, 96th Cong., 1st Sess. 63 (1979)...............................14, 23, 25, 26

Statement of Administrative Action accompanying
the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (I),
103d Cong., 2d Session (1994)...................................................................4, 15

**Administrative Determinations**

*Emulsion Styrene-Butadiene Rubber from Brazil, et al.*,
USITC Pub. 4717 (Sept. 2017)...........................................................23

*Gas Powered Pressure Washers from China*,
   USITC Pub. 5488 (Feb. 2024) ............................................................................24

*Methionine from Japan and Spain*,
   USITC Pub. 5230 (Sept. 2021) ..........................................................................24

*Oil Country Tubular Goods from Argentina, et. al.*,
   USITC Pub. 5381 (Nov. 2022) ...........................................................................24

*Raw Honey from Argentina, Brazil, India, and Vietnam*,
   USITC Pub. 5327 (Final) (May 2022) (Appx33-470), and
   accompanying confidential views of the Commission ("Views")
   (Appx471-543) ..........................................................................................*passim*

*Thermal Paper from Germany, et. al.*,
   USITC Pub. 5237 (Final) (Nov. 2021) ...............................................................24

On behalf of the American Honey Producers Association and Sioux Honey Association (collectively "Defendants-Appellees"), we respond to the brief filed on behalf of Sweet Harvest Foods ("Sweet Harvest"), Export Packers Company Limited, Honey Holding I, LLP dba Honey Solutions, and Sunland Trading, Inc., and the National Honey Packers & Dealers Association ("NHPDA") (collectively, "Plaintiffs-Appellants"). Defendants-Appellees support the affirmative critical circumstances determination issued by the U.S. International Trade Commission ("Commission" or "ITC") in *Raw Honey from Argentina, Brazil, India, and Vietnam*, USITC Pub. 5327 (Final) (May 2022) (Appx33-470), and accompanying confidential views of the Commission ("Views") (Appx471-543), and urge the Court to affirm.

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendants-Appellees states that no other appeal in or from the same civil action or proceeding in the U.S. Court of International Trade ("CIT") was previously before the U.S. Court of Appeals for the Federal Circuit or any other appellate court, and no action pending before the CIT may be directly affected by the Court's disposition of this appeal.

## STATEMENT OF THE CASE

Defendants-Appellees disagree with the statement of the case as presented in Plaintiffs-Appellants' opening brief and believe the following provides additional background critical to this appeal.

### *Relevant Statutory Provisions Governing Unfair Trade Investigations*

Unfair trade investigations are conducted concurrently by the U.S. International Trade Commission ("Commission") and the U.S. Department of Commerce ("Commerce"). 19 U.S.C. §§ 1673, 1673b(b)(1)(A), § 1673b(a)(1)(A).

In an antidumping investigation, the Commission determines whether a domestic industry has been materially injured by reason of an imported product, and Commerce determines whether imports of that product are being sold in the United States at less than fair value. *Id.* During an investigation, both agencies issue a preliminary and a final determination. 19 U.S.C. §§ 1673b(b)(1)(A) (preliminary dumping determination), 1673d (final dumping determination); 1673b(a)(1) (preliminary injury determination), 1673d(b)(1) (final injury determination). When each agency issues an affirmative final determination of material injury and dumping, respectively, an antidumping duty order is published by Commerce. 19 U.S.C. § 1673e.

Suspension of liquidation, and the requirement to post a cash deposit, of entries of the imported product first occurs upon publication of an affirmative preliminary determination by Commerce.  19 U.S.C. §§ 1673b(d)(1)-(2).  The statute provides that the date of publication of Commerce's preliminary determination is the effective date for suspension of liquidation and the posting of a cash deposit for imports.  *Id.*

In addition, upon issuing an affirmative final determination, each agency must assess whether "critical circumstances" exist when a timely allegation is filed on behalf of a petitioning domestic industry.  The Commission must determine "whether the imports subject to the affirmative {Commerce critical circumstances} determination . . . are likely to undermine seriously the remedial effect of the antidumping order to be issued . . . ."  19 U.S.C. § 1673d(b)(4)(A)(i).  The Statement of Administrative Action states that the Commission is to determine "whether, by massively increasing imports prior to the effective date of relief, the importers have seriously undermined the remedial effect of the order" and "whether the surge in imports prior to the suspension of liquidation, rather than the

failure to provide retroactive relief, is likely to seriously undermine the remedial effect of the order."[1]

The critical circumstances provision is intended "to deter exporters whose merchandise is subject to an investigation from circumventing the intent of the law by increasing their exports to the United States during the period between initiation of an investigation and a preliminary determination by {Commerce}." *ICC Industries, Inc. v. United States*, 812 F.2d 694, 699-700 (Fed. Cir. 1987), *aff'g* 632 F. Supp. 36 (Ct. Int'l Trade 1986) (quoting H.R. Rep. No. 96-317 at 63 (1979), *reprinted in* 1979 U.S. Code Cong. & Admin. News 449 (1979); *see* 19 U.S.C. §§ 1671b(e)(2), 1673b(e)(2).

The statute requires the Commission to consider three factors in evaluating whether critical circumstances exist:

> (ii) Factors to consider.—In making the evaluation under clause (i), the Commission shall consider, among other factors it considers relevant—
>
> (I)    the timing and the volume of the imports,
>
> (II)   a rapid increase in inventories of the imports, and
>
> (III)  any other circumstances indicating that the remedial effect of the antidumping order will be seriously undermined.

---

[1]    Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316(I) Cong., 2d Session (1994) at 877.

19 U.S.C. § 1673d(b)(4)(A)(ii). When both the Commission and Commerce determine that critical circumstances exist, the suspension of liquidation of antidumping duties, as well as the ultimate assessment of duties, may be applied retroactively up to 90 days prior to the date of publication of Commerce's preliminary determination. 19 U.S.C. § 1673b(e); 19 U.S.C. §§ 1673d(a)(3), (b)(4)(A).

## *The Critical Circumstances Determination for Imports from Vietnam*

In its analysis of the statutory factors, the Commission first selected the interim periods over which to compare import behavior prior to the filing of the petition with import behavior immediately after the filing of the petition but before the Commerce Department reached a preliminary determination and imposed preliminary duties. Appx534-35. The Commission selected the six-month period November 2020 through April 2021 as the "pre-petition period" and May 2021 to October 2021 as the "post-petition period" leading up to the Commerce preliminary determination. Appx535. No parties objected to the interim periods selected and in fact Appellants agreed with use of the six-month comparison periods in their posthearing brief. Appx535 n.280 ("Petitioners and Respondents agreed that six-month comparison periods are appropriate.") (citations omitted).

The Commission then moved on to consider the statutory factors it was required to analyze, beginning with the first factor, the timing and volume of subject imports. Appx537-38; 19 U.S.C. § 1673d(b)(4)(A)(ii)(I). To assess the increase in imports from Vietnam, the Commission compared import volumes during the November 2020-April 2021 pre-petition period to import volumes during the May 2021-October 2021 post-petition period. Appx535, Appx537-38. The Commission explained that imports of raw honey from Vietnam increased from 48.0 million pounds during the pre-petition period to 87.9 million pounds during the post-petition period – an increase of 83.2 percent. Appx537-38. In context, the post-petition period volume of 87.9 million pounds was equivalent to 19.1 percent of apparent U.S. consumption during the interim 2021 period. Appx538. Moreover, "{t}he volume of subject imports from Vietnam in four of the six months of the post-petition period (July, August, September, and October 2021) significantly exceeded the volume of subject imports from Vietnam recorded in any prior month of the POI." Appx538. These significant monthly import volumes during the post-petition period reversed a downward trend in imports volumes from Vietnam during the December 2020 to April 2021 period. *Id.*

The Commission next considered whether "a rapid increase in inventories of the imports" occurred. Appx538-39; 19 U.S.C. § 1673d(b)(4)(A)(ii)(II). The

Commission compared imports in April 2021, the last month of the pre-petition period, with imports in October 2021, the last month of the post-petition period. The Commission found that importers' inventories of raw honey imports from Vietnam increased *threefold* from April 30, 2021 to October 31, 2021. Appx538-39. The Commission noted that several importers, [ name ] increased their inventories of honey imports before preliminary duties went into effect in November 2021, despite the fact that demand did not increase by comparable levels. Appx539 n.299 (listing confidential volumes of increased inventories for numerous individual importers [ name ]). At no time during the investigation did [ name ] explain these rapid and significant increases in inventories of raw honey from Vietnam. The Commission also found as another consideration in its critical circumstances analysis that subject imports significantly undercut U.S. producer prices. Appx539. Indeed, although prices for both domestic raw honey and subject imports rose in interim 2021, raw honey imports from Vietnam continued to undersell domestic raw honey by wide margins during the six-month post-petition period. Appx539.

The Commission determined the record facts "suggest that the volume of imports in the post-petition period was not simply responding to increased demand or a continued upward trend of imports from Vietnam, but rather a deliberate effort

to enter product into the U.S. market in substantial and increasing volumes while evading potential exposure to the retroactive application of antidumping duties." Appx540. Moreover, "{t}he rapid and substantial increase in inventories of subject imports from Vietnam provides further evidence that importers were stockpiling subject imports rather than just responding to U.S. market conditions." Appx541; *see also id.* at n.305 ("It is therefore likely that the increased imports and inventories of subject imports from Vietnam remained in inventory somewhere in the supply chain and were not immediately consumed.").

In response to the NHPDA's claim that importers had sold off much their inventory at the time of administrative briefing, the Commission explained that the large and increased volumes of raw honey imported immediately prior to the imposition of preliminary duties were likely to continue to exert downward pressure on prices until the raw honey was consumed by end users, "particularly given the continued underselling by subject imports from Vietnam at wide margins." Appx541. Explaining the lack of probity of contemporary evidence submitted in NHPDA's posthearing brief, the Commission pointed out, for example, that the evidence [ name ] provided was contradicted by its questionnaire response data on the record. Appx541-542 n.306 (addressing NHPDA's argument regarding inventory levels in a detailed, confidential

footnote).  Not only did the Commission address the evidence of contemporary inventory levels provided in NHPDA's posthearing brief, it addressed the participation of certain "ingredient purchasers" in the investigation and the impact of that participation on the development of the administrative record.  Appx542 n.306 (addressing participation of ingredients purchasers in a detailed, confidential footnote).

Accordingly, the Commission concluded "{g}iven the volume and timing of imports, including the sharp increase in the volume of post-petition imports prior to the retroactive liability period under the critical circumstances provision, the rapid increase in and size of inventories, and the continued underselling of the domestic like product by wide margins, we find that the remedial effect of the antidumping duty order with respect to subject imports from Vietnam will likely be seriously undermined."  Appx542.  Commissioner Johanson dissented from the Commission's affirmative critical circumstances finding.  Appx544-553.

### Appeal Before the U.S. Court of International Trade

Appellants challenged the Commission's affirmative critical circumstances determination at the U.S. Court of International Trade ("CIT").  The CIT affirmed the Commission's findings on November 17, 2023, rejecting Appellants' legal and factual challenges to the Commission's decision.  Appx1-32.  The CIT recognized

the "confusing" and "contradictory" nature of Appellants' legal arguments (Appx9) and rejected their arguments that the Commission's analysis was inconsistent with the critical circumstances statutory framework. *See* Appx8-18. With respect to Appellants' evidentiary arguments, the CIT agreed that Appellants failed to request the Commission collect post-investigation period end-user inventory data they now claim on appeal is essential to the critical circumstances analysis. Appx22-23. The CIT noted Appellants' major concession at oral argument that "they are no longer pressing the argument that the record was incomplete and that the ITC should have collected 2022 inventory data." Appx23 n.5 ("Plaintiffs' counsel confirming that the collection of data issue is no longer a 'live issue,' maintaining that Plaintiffs remaining argument about 2022 inventory data is that ITC failed to consider data that Plaintiffs had placed on the record.") (citing transcript of oral argument). The CIT also affirmed the Commission's determinations that Appellants' contention that importers had sold off their inventories was actually undermined by other record evidence and rejected the argument that the agency's conclusions were based on assumptions and guesswork. Appx21-23.[2] The CIT explained that to the extent the record lacked any

---

[2] The CIT's decision rejected additional evidentiary arguments raised by Appellants during the CIT appeal that have not been appealed to this Court. *See generally* Appx23-28.

information Appellants deemed relevant, they (and any other parties that participated in the investigation) were in the position to submit any such data to the Commission. Appx22-23.

## SUMMARY OF THE ARGUMENT

Appellants first argue that the Commission's affirmative critical circumstances finding was legally flawed. Yet, Appellants challenge only the Commission's analysis of one of the three statutory factors and then miscite that statutory factor repeatedly. Appellants do not dispute the massive surge in import volumes and the underselling by imports that supported the Commission's finding that the remedial effect of the antidumping order on imports of honey from Vietnam would be seriously undermined. Instead, they single out the import inventories as the focus of their challenge. In doing so, however, Appellants repeatedly miscite the statutory language, focusing on the "level" of inventories at the time of the Commission's final determination, rather than addressing the "rapid increase in inventories" prior to the imposition of provisional measures that the statute requires the Commission to consider. Contrary to Appellants' claim, the Commission's analysis comports precisely with the plain language of the statute. Accordingly, Appellants' legal arguments should be rejected.

Appellants next claim that the Commission's finding is unsupported by substantial evidence. Appellants appear to try to resurrect their claim that contemporaneous inventory data is "missing" from the record, however, they conceded during the CIT hearing that the record was complete and that this is no longer a "live issue." In any case, Appellants failed to exhaust their administrative remedies by never asking the Commission to collect contemporaneous inventory data. Appellants' remaining argument accuses the Commission of failing to take into account "contradictory" record evidence regarding inventory levels and allegations of stockpiling. This claim, however, rests on an incomplete presentation of the Commission's analysis. The Commission's analysis in fact squarely addresses this argument and considers all relevant record evidence. Accordingly, Appellants' evidentiary arguments should also be rejected and the Commission's affirmative critical circumstances determination should be affirmed.

## ARGUMENT

## I. THE COMMISSION'S ANALYSIS OF THE STATUTORY FACTORS DEFINING CRITICAL CIRCUMSTANCES WAS IN ACCORDANCE WITH LAW

Appellants contend that the Commission's finding of critical circumstances was legally flawed but challenge the Commission's analysis of only one of the three statutory factors, then miscite that statutory factor repeatedly. While ignoring the massive surge in import volumes and the underselling by imports that

supported the Commission's finding that the remedial effect of the antidumping order on imports of honey from Vietnam would be seriously undermined, Appellants single out the import inventories as the focus of their challenge. They then repeatedly miscite the statute, focusing on the "level" of inventories at the time of the Commission's final determination, rather than addressing the "rapid increase in inventories" prior to the imposition of provisional measures that the law requires the Commission to consider. In fact, the Commission's analysis comports precisely with the plain language of the statute.

### A. The Commission's Critical Circumstances Determination Was Based on Three Statutory Prongs, Two of Which Appellants Ignore

In analyzing whether critical circumstances exist, the Commission is required to consider three statutory factors to determine whether the imports are likely to undermine seriously the remedial effect of the antidumping order. 19 U.S.C. § 1673d(b)(4)(A). Specifically, the statute states:

> (ii) Factors to Consider.—In making the evaluation under clause (i), the Commission shall consider, among other factors it considers relevant—
>
> (I)     the timing and the volume of the imports,
>
> (II)    a rapid increase in inventories of the imports, and
>
> (III)   any other circumstances indicating that the remedial effect of the antidumping order will be seriously undermined.

19 U.S.C. § 1673d(b)(4)(A)(ii).

The purpose of the critical circumstances provision is to prevent imports from surging into the market after a case is filed but before provisional or preliminary duties are imposed and, thus, undermining the remedial effect of the duties. As the legislative history explains:

> This provision is designed to provide prompt relief to domestic industries suffering from large volumes of, or a surge over a short period of, imports and to deter exporters whose merchandise is subject to an investigation from circumventing the intent of the law by increasing their exports to the United States during the period between initiation of an investigation and a preliminary determination by the Authority.

H.R. Rep. No. 317, 96th Cong., 1st Sess. 63 (1979); *see also ICC Industries, Inc.*, 812 F.2d at 699-700 ("Legislative history indicates that the critical circumstances provision was enacted to provide meaningful relief to domestic industries. . . .").

Courts have also expressed the "clear emergency purpose of the {critical circumstances} provision" . . . . which is "peculiarly urgent." *See ICC Industries, Inc. v. United States*, 632 F. Supp. 36, 40-41 (Ct. Int'l Trade 1986), *aff'd*, 812 F.2d 694, 699-700 (Fed. Cir. 1987); *see also Sichuan Changhong Elec. Co. v. United States*, 460 F. Supp. 2d 1338, 1342 n.4, 1359-60 (Ct. Int'l Trade 2006) ("A finding of critical circumstances pursuant to 19 U.S.C. § 1673b(e), is an emergency measure to 'provide prompt relief to domestic industries suffering from large

volumes of, or a surge over a short period of imports.'") (quoting H.R. Rep. No. 96-317 at 63 (1979)). When importers import large volumes of imports immediately before provisional duties are imposed and stockpile inventories as a means of evading duties, they circumvent the purpose of the law. The critical circumstances provision is designed to ensure that exporters do not seize the opportunity to flood the U.S. market with dumped imports before provisional measures are imposed and continue to harm U.S. producers. *Id.*

Given an affirmative Commerce Department finding of critical circumstances as to imports of honey from Vietnam,[3] the Commission properly proceeded to analyze the above three statutory factors and reached an affirmative critical circumstances finding as to Vietnam. Appx529-43. Although Appellants focus only on the inventory factor, it is first important to recognize that the Commission's finding of critical circumstances was based on all three statutory

---

[3] The Commerce Department also reached an affirmative critical circumstances finding as to Argentina, prompting the Commission to undertake a critical circumstances analysis as to imports from Argentina too. Appx535-37. That assessment and determination was based on the same statutory analysis and the same time period as the analysis the Commission undertook with respect to imports from Vietnam. *Id.* In the Argentina analysis, however, based on those facts of record, the Commission reached a negative critical circumstances determination. *Id.* No party has disputed that the analysis of the Commission in the Argentine case was incorrect.

factors it was required to consider, each of which supported its affirmative determination.

With respect to the first statutory factor, the Commission found that the "timing and volume of imports" supported a critical circumstances finding, pointing out that imports increased by 83.2 percent from the pre-petition period to the post-petition period, that this volume was equivalent to 19.1 percent of U.S. consumption in the most recent period, and that the volume of imports from Vietnam in four of the six months of the post-petition period significantly exceeded the volume of imports from Vietnam in any prior month of the investigatory period. Appx537-38. Appellants do not challenge this finding demonstrating a large post-petition surge in imports.

With respect to the second statutory factor, the "rapid increase in inventories," the Commission found that importer inventories of imports from Vietnam experienced "almost a three-fold increase" between April 30, 2021 (the final month of the pre-petition period) and October 31, 2021 (the final month of the post-petition period). Appx538-39. The Commission also cited to record evidence of several individual importers that had increased inventories significantly before provisional duties were imposed. Appx539 n.299. Appellants do not challenge this finding, but, as discussed below in Section I.C, argue only that the

Commission should have collected and considered inventory volumes after October 31, 2021, the end of the post-petition period.

With respect to the third statutory factor, any "other circumstances" indicating the remedial effect of the order would be undermined, the Commission pointed to the continued underselling "by wide margins" by subject imports from Vietnam during the post-petition period (unlike the imports from Argentina, as to which a negative critical circumstances finding was issued). Appx539. Appellants do not challenge this finding.

Finally, the Commission observed that the timing of the imports in surging into the United States after the petition was filed was significant and probative given that these imports were not being sold into the market to meet a demand increase. Appx540. Rather than being imported to meet market conditions, these imports were being stockpiled in inventories. Appx541. The Commission concluded that these facts reflected "a deliberate effort to enter product into the U.S. market in substantial and increasing volumes while evading potential exposure to the retroactive application of antidumping duties." Appx540. On the basis of its analysis and findings with respect to all three of the statutory factors, the Commission reached an affirmative critical circumstances finding.

The Commission's finding with respect to the other two unchallenged statutory factors supporting the Commission's critical circumstances finding cannot be ignored. Although, as discussed below, Appellants' challenge to the inventory factor is erroneous, the Commission's determination was predicated on other record evidence that Appellants do not contest and that also supports a critical circumstances finding.

**B.** **The Commission Properly Analyzed Whether There Had Been a "Rapid Increase" in Inventories as the Statute Requires, Not Whether "Current" Inventory "Levels" Are Significant**

Perhaps the most remarkable aspect of Appellants' argument to this Court is that, while asserting the Commission did not adhere to the statutory requirements in analyzing inventories, Appellants repeatedly miscite the statute. The statute states that the Commission "shall consider" whether there has been "a *rapid increase in inventories* of the imports." 19 U.S.C. § 1673d(b)(4)(A), 1673d(b)(4)(A)(ii)(II) (emphasis added). Appellants contend instead that "the inventory provision, 19 U.S.C. § 1673d(b)(4)(A)(ii)(II), {} specifically directs that the Commission evaluate the *level* of the critical circumstances inventories." Appellants' Br. at 15 (emphasis added). Appellants then further expand their rewriting of the statute to assert that it requires the Commission to "examine contemporaneous, not historic inventory levels," even though they provide no

reference to the statute to support this claim. *Id.* at 18. Appellants' reference to inventory "levels," rather than a rapid *increase* in inventories as the statute states, is not an accidental or isolated example of their miswording of the statute; they repeat their own, reworded version of the statute *repeatedly* throughout their brief as the basis for their argument.[4]

Only by altering the plain statutory language can Appellants contend that the Commission did not undertake the analysis they are seeking – an assessment of inventory levels contemporaneous with the time of the Commission's vote.[5] *Id.* at 16-17. The plain language of the statute, however, contains no requirement that

---

[4]  *See* references to "levels," "contemporaneous" inventories, or "current" inventory "levels" in Appellants' Brief at pages 3 (statute requires "evaluating inventory levels"), 12 ("contemporaneous inventory data"), 15 ("level of critical circumstances inventories"), 18 ("inventory levels" and "contemporaneous" levels), 19 ("inventory levels"), 20 ("the requirement to consider inventory levels is mandatory; the statute states that the Commission 'shall consider' inventory levels"), 21 ("contemporaneous" inventory "levels"), 22 (need to examine "inventory levels"), 23 ("level" of critical circumstances entries), 24 ("the missing data bears directly on a factual issue – inventory levels –review of which the statute provides is mandatory"); 26 ("level of critical circumstances entries"); 27 ("{t}he statute specifically requires that the Commission evaluate inventory levels . . ."), 29 ("the statute also requires, however, that the Commission evaluate the level of inventories . . ."); 30 ("requiring consideration of **both** the increase in imports **and** the inventory levels . . ." (emphasis in original)).

[5]  Notably, the CIT opinion recognizes Appellants concession at oral argument that "they are no longer pressing the argument that the record was incomplete and that the ITC should have collected 2022 inventory data." Appx23 n.5. Appellants' concession that the record is complete and not missing any inventory data as an evidentiary matter also undermines their statutory argument that the Commission was obligated to undertake an additional analysis of contemporaneous inventory levels beyond the end of the post-petition period in October 2021.

the Commission assess inventory levels at any specific time; the statute requires the Commission to consider a "rapid increase in inventories." 19 U.S.C. § 1673d(b)(4)(A)(ii)(II). As discussed in section II below, the Commission did indeed analyze and find that a rapid increase in inventories occurred. Appx538-39. Notably, Appellants do not disagree that the statute requires an examination of the increase in inventories, nor do they challenge the Commission's finding of a rapid increase in inventories. They simply argue that the statute requires an additional finding regarding contemporaneous inventory levels that is nowhere present in the statute:

> The CIT further concluded that it is up to the Commission to evaluate "whether the subject imports entering during the period after the filing of the petition and prior to suspension of liquidation were likely to seriously undermine the remedial effect of the antidumping duty order." Appx14-15. Plaintiffs-Appellants agree – but, under the statute, the Commission is required to consider any increase in inventory levels as well. By requiring consideration of both the increase in imports and the inventory levels (which, as established above, should be measured at the at the {sic} time of the final determination), Congress established a structure that necessarily takes into account not only whether an increase in critical circumstances entries occurred, but also whether they remained in inventories and thus potentially could undermine the remedial effect of the order.

Appellants' Br. at 30. The first two sentences of Appellants' above paragraph properly refer to the lower court's holding (based on the Commission's analysis of import volumes) as well as to the statutory factor regarding an "increase" in inventories. Then, however, Appellants depart completely from the statute. They assert that the statute requires an additional assessment of "inventory levels" and opine that this invented statutory requirement must be undertaken at the time the final Commission determination is issued. *Id.*

This final sentence in the above paragraph shows how Appellants have pivoted from the plain statutory language to language of their own invention to reach a conclusion totally divorced from the statute. Their only "hook" to the statute is the reference to whether the specified statutory factors show that the imports are seriously undermining relief. Appellants' Br. at 30. But the statute expressly instructs the Commission to consider the timing and volume of imports and the rapid increase in inventories (and any other relevant factors) as a means of determining whether the imports are seriously undermining relief. Nothing in the statute suggests that an *additional* factor focused on the level of imports at the time of the Commission's decision must be considered as well.[6]

---

[6]   While subsection (III) of the statute (19 U.S.C. § 1673d(b)(4)(A)(ii)(III)) authorizes the Commission to consider "any other circumstances" indicating the remedial effects of the order would be undermined, that provision is not a
(footnote cont'd on next page)

Given that Appellants concede that the statute requires an assessment of whether a rapid increase in inventories occurred, that the Commission undertook such an analysis and concluded there was a rapid increase in inventories, and that there is no additional statutory requirement that the Commission consider inventory levels at the time of its final determination, the Commission's inventory analysis comports with the statute.[7]

## C. The Period the Commission Selected to Analyze Import Volume and Inventory Increases Comports with Law

In analyzing the timing and volume of imports as well as the rapid increase in inventories pursuant to the statute, the Commission focused on the "period

---

requirement that the Commission consider inventory *levels* as Appellants claim. Appellants' Br. at 30. Here, the Commission looked at prices of imports as another circumstance indicating the remedial effect of the order would be undermined. Appx539. The purpose of this additional factor is not to alter the manner in which the Commission assesses inventories. The statute is explicit in how inventories are to be assessed – the Commission is to determine if there has been a "rapid increase in inventories." 19 U.S.C. § 1673d(b)(4)(A)(ii)(II).

[7] Because the plain language of the statute addresses and refutes each of the arguments raised by Appellants in this appeal, the recent U.S. Supreme Court holding in *Loper Bright Enterprises, Inc. v. Raimondo*, Appeal No. 22-451, 603 U.S. __ (June 28, 2024) overruling *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), is inapplicable. Appellants' arguments here are predicated on their attempts to rewrite the statutory language, not on a challenge to the agency's interpretation of ambiguous or silent text. There is no question that the Commission has acted within its statutory authority here, given that the Commission has adhered to the exact statutory instructions in analyzing the rapid increase in inventories, while Appellants urge an interpretation of inventory levels at the time of the final Commission decision, a factor nowhere set forth in the law.

between initiation of an investigation and a preliminary determination by the Authority" as the legislative history instructs. Appx534-35, Appx538-39; H.R. Rep. No. 317, 96th Cong., 1st Sess. 63 (1979). The Commission's established practice has been to rely on the six-month pre-petition period as compared to the six-month post-petition period in making this assessment.[8] Here, the Commission stated it would follow its standard practice and compare the six-month pre-petition period November 2020-April 2021 with the six-month post-petition period May 2021-October 2021. Appx535.

Importantly, all parties – both petitioners and respondents – agreed that these six-month comparison periods were appropriate. Appx535 n.280, citing Petitioners' Prehearing Br. at 105, 111 (Appx29190, Appx29196); NHPDA Posthearing Br. at Exh. 2, Answer 3 (Appx31751-55). On this basis, the Commission compared import volumes in November 2020-April 2021 with import volumes in May 2021-October 2021 in examining the timing and volume of

---

[8] *See Emulsion Styrene-Butadiene Rubber from Brazil, et al.*, USITC Pub. 4717 (Final) (Sept. 2017) at 33 ("Unless the industry under investigation involves seasonality or the Commission decides that circumstances warrant otherwise, the Commission generally compares six months of data gathered from the periods immediately preceding and following the petitions' filing, with the earlier period including the month in which the petitions were filed.") (citing *e.g.*, *Laminated Woven Sacks from China*, USITC Pub. 4025 (Final) (July 2008) at 48-50; *Light-Walled Rectangular Pipe from China et al.*, USITC Pub. 4024 (Final) (July 2008) at 18-19; *Polyester Staple Fiber from China*, USITC Pub. 3922 (Final) (June 2007) at 35)).

imports (the first statutory factor). Appx537-38. Based on the selection of these six-month periods, in assessing whether there had been a rapid increase in inventories, the Commission compared inventories as of April 2021 (the end of the pre-petition period) with inventories in October 2021 (the end of the post-petition period). Appx538-39. This approach of comparing inventories during the final month of the pre-petition period with those in the final month of the post-petition period to determine whether a rapid increase occurred is also consistent with Commission practice.[9]

Although Appellants later argued that the inventories were sold off after this period and thus the inventory increase is irrelevant (Appellants' Brief at 39-40), they expressly accepted the six-month comparison periods during the underlying investigation. Appx31751-55. Further, they do not challenge reliance on this

---

[9] *See, e.g., Gas Powered Pressure Washers from China*, USITC Pub. 5488 (Final) (Feb. 2024) at 5-9 (comparing inventory levels at the ends of the relevant six- and five-month post-petition periods with the ends of the corresponding pre-petition periods); *Oil Country Tubular Goods from Argentina, et. al.*, USITC Pub. 5381 (Final) (Nov. 2022) at 47-52 (same); *Thermal Paper from Germany, et. al.*, USITC Pub. 5237 (Final) (Nov. 2021) at 51-58 (comparing inventory levels in March 2021 and September 2020 upon analyzing the six-month post-petition period of October 2020 to March 2021, and the six-month pre-petition period of April 2020 to September 2020); *Methionine from Japan and Spain*, USITC Pub. 5230 (Final) (Sept. 2021) at 5-8 (comparing inventory levels in January 2021 and July 2020 upon analyzing the six-month post-petition period of August 2020 to January 2021, and the six-month pre-petition period of February 2020 through July 2020).

period to assess the import volume surge. What they do not appreciate is that the selection of this comparison period <u>also</u> meant that the Commission analyzed the rapid increase in inventories by comparing imports at the ends of those pre- and post-petition periods, *i.e.*, April 2021 with those in October 2021, consistent with the legislative directive to compare import behavior between the time of initiation and when preliminary duties are imposed by the Commerce Department. H.R. Rep. No. 317, 96th Cong., 1st Sess. 63 (1979). Only by examining import behavior in terms of volume surges and inventory increases *before* the provisional measures were imposed is the Commission's analysis consistent with the legislative directive.

Appellants' contention that the time period the Commission relied upon was wrong is based solely on their revisionist statutory wording. Appellants would have the Commission look at inventory levels contemporaneous with the Commission's vote, rather than examine a "rapid increase in inventories" as the statute requires. Appellants' Br. at 29-30. In examining whether there has been a rapid increase in inventories, the Commission by definition must examine inventories over a particular time period and not at one distinct moment in time. That time period, consistent with the legislative directive, is the period between the initiation of the trade case and the imposition of provisional duties by Commerce.

H.R. Rep. No. 317, 96th Cong., 1st Sess. 63 (1979).[10] That is precisely the time

period over which the Commission assessed the rapid inventory increase.

Appx538-39. Such a requirement makes sense, as importers that bring in large

volumes of imports and stockpile those in increasing inventories shortly before

preliminary duties are imposed evade the imposition of the remedial duties and sell

the unfairly-traded product into the market in competition with U.S. producers to

their detriment. Appellants' argument that the time period on which the

Commission relied on was incorrect is predicated on a misreading of the plain

statutory language.

It is only by inserting a new requirement into the statute that, in addition to

examining a rapid increase in inventories, the Commission must also examine the

level of inventories at one moment in time that the question of the appropriate time

in which to examine those "levels" (historically or at the time of the Commission's

---

[10] The approach the Commission took in this case of looking at the rapid increase in inventories prior to the imposition of provisional measures is consistent with the approach it took in the case giving rise to another recent appeal. In *MTD Products, Inc. v. United States,* Slip Op. 23-34, 2023 Ct. Int'l Trade LEXIS 37 (Mar. 16, 2023), the Court sustained the Commission's comparison of inventories during the pre-petition period with those in the post-petition period leading up to imposition of provisional measures. *Id.* at 16-17, 2023 Ct. Int'l Trade LEXIS at *15-16. There, the Commission had pointed to the "large stockpile of imports prior to the imposition of provisional duties" and found the "result was that U.S. purchasers had less need to buy" subject product," facts the Court cited in sustaining the Commission's analysis of inventories and finding of critical circumstances. *Id.* at 8, 16-21, 2023 Ct. Int'l Trade LEXIS at *7-8, 15-20.

final determination) would be relevant. Given that there is no statutory requirement that the level of inventories at any one time, as opposed to the rapid increase in inventories between the pre-petition and post-petition period, be examined, the question of the relevant time period for this inventory level analysis is moot.

### D. Appellants' Proposed Reading of the Statute Is Not Only Inconsistent with the Plain Statutory Language But Would Undermine the Statute's Purpose

At bottom, Appellants' attempt to rewrite the statute reveals an effort to avoid the imposition of retroactive duties notwithstanding satisfaction of the statutory critical circumstances factors. There is no question that the law requires the Commission to examine the timing and volume of imports and the rapid increase in inventories. Record facts show surging imports and inventories between the pre-petition and post-petition periods, clearly designed to beat the imposition of the preliminary duties.

Notwithstanding these facts – along with evidence of rampant underselling by the imports – Appellants are seeking an "out" from retroactive duty imposition by trying to inject an exception into the statute IF they are able to sell off the inventories quickly into the market. Not only does no such exception exist, but allowing importers to race product into the U.S. market, stockpile those imports,

and then evade retroactive duties if they can quickly sell off the imports out of their inventory to another company would thwart the entire purpose of the provision. The Commission recognized here the "deliberate effort" by the importers of Vietnamese honey to evade duties by their actions of increasing volumes and inventories rapidly prior to preliminary duty imposition. Appx540. Neither law nor sound policy supports the outcome Appellants seek.

## II.  THE COMMISSION'S AFFIRMATIVE CRITICAL CIRCUMSTANCES DETERMINATION IS SUPPORTED BY SUBSTANTIAL RECORD EVIDENCE

Appellants next claim the affirmative critical circumstances determination is unsupported by substantial evidence because the Commission relied on unreasonable assumptions to compensate for "missing" inventory data and ignored inventory information provided in NHPDA's posthearing brief that purportedly demonstrated that any significant inventories of raw honey from Vietnam were "sold off" prior to issuance of the antidumping duty order. Appellants' Br. at 35-38. Appellants also argue that the Commission failed to acknowledge record evidence regarding the alleged "stockpiling" of raw honey by end users. *Id.* at 39-41. The Court should reject these arguments, both of which are squarely addressed in the Commission's findings.

As noted above, Appellants do not challenge the Commission's finding of a rapid increase in inventories of raw honey imports from Vietnam, the factual finding actually required by the statute. Nor can Appellants continue to challenge that the Commission collected all necessary data to have a "complete record" on which to base its critical circumstances analysis; they conceded this point at the hearing before the CIT. Appx23 n.5. Appellants' remaining evidentiary argument amounts to a claim that the Commission did not adequately address all "contradictory" record evidence that Appellants placed on the record, which, as discussed below, is disproven by the Commission's findings and analysis.

## A. The Record Is Not "Missing" Any Data Necessary to the Critical Circumstances Analysis

Appellants first claim that the Commission relied on unreasonable assumptions because inventory data from end users was "missing" from the record. Appellants' Br. at 35-38. There are a number of problems with this argument.

First, the statute requires the Commission to examine a rapid increase in inventories of the subject imports, which the Commission does by gathering information on inventories from importers, as it did in this case. Appx537-38. The statute does not say anything about collecting inventory level information from end users. *See also* Sections I.B-D *supra*. The Commission was under no legal

obligation to collect end user inventory information that is irrelevant to the statutory analysis. *Id.*

Second, Appellants never requested that the Commission collect end user data during the investigation. Appellants conceded as much at oral argument before the CIT. The CIT's opinion states:

> At Oral Argument, the parties addressed this issue and ***Plaintiffs confirmed that they are no longer pressing the argument that the record was incomplete and that the ITC should have collected 2022 inventory data***. *See* Oral Arg. at 02:10:27–02:12:18 (Plaintiffs' counsel confirming that the collection of data issue is no longer a "live issue," maintaining that Plaintiffs remaining argument about 2022 inventory data is that ITC failed to consider data that Plaintiffs had placed on the record); *cf.* Pls.' Reply at 15 (acknowledging that "importers and packers provided a full set of inventory data relating to inventory levels of the critical circumstances entries," while also suggesting that "it would have been preferable for the Commission to gather such information as part of its questionnaire process").

Appx23 n.5 (emphasis added). When a party concedes an issue before a trial court, it may not re-litigate that issue before an appellate court. *See, e.g., Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1350 (Fed. Cir. 2016) ("Nan Ya has thus both failed to exhaust its remedies before the agency and also waived these arguments. . . . Nan Ya conceded during oral argument that it had not preserved these arguments for appeal.") (internal citations omitted). Because Appellants

NONCONFIDENTIAL

already conceded before the lower court that their claim of "missing" data is no longer a live issue and admitted the record is complete, this Court should reject Appellants' attempt to re-raise the issue in this appeal and deem it waived.

Moreover, Appellants never requested that the Commission collect this inventory data during the investigation and, to the contrary, agreed with use of the six-month comparison periods the Commission relied upon in its analysis. Appx535 n.280 ("Petitioners and Respondents agreed that six-month comparison periods are appropriate.") (citations omitted). The doctrine of administrative exhaustion applies to any arguments raised on appeal but not before the agency in the first instance. 28 U.S.C. § 2637(d); *see also Boomerang Tube LLC v. United States*, 856 F.3d 908, 912–13 (Fed. Cir. 2017) ("We have explained that this statutory mandate 'indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies.'") (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)) (other citations omitted). Here, Appellants actively participated in every phase of the underlying investigation – the preliminary phase, comments on draft Commission questionnaires, and the submission of questionnaires and briefing during the final phase – and had every

opportunity to request the collection of any data they viewed as relevant.[11] *See Mexichem Fluor Inc. v. United States*, 179 F. Supp. 3d 1238, 1254 (Ct. Int'l Trade 2016) ("Mexichem did not challenge this decision below by requesting that the Commission expand the POI to include 2010 and to collect data covering 2010. Just because Mexichem now identifies a different methodology that might support its own narrative does not mean that the Commission's normal practice is unlawful."). Despite having multiple opportunities to raise this issue to the Commission during the underlying investigation, Appellants were silent and never sought collection of end user inventory data. Accordingly, the doctrine of exhaustion bars Appellants from presenting this argument for the first time on appeal, which in any case is contrary to the position it held before the Commission.

The Court should find that Appellants conceded before the CIT that the record is complete and not missing end user inventory data, and otherwise failed to exhaust their administrative remedies with respect to this argument.

---

[11]   Despite never having asked the Commission to gather end user inventory data, Appellants submitted selective, but incomplete, inventory data in their post-hearing brief, thereby demonstrating another avenue for them to provide any inventory data they viewed as relevant even absent a Commission request for such data. *See* NHPDA Post-Hrg. Br. at Exhs. 3 and 4 (Appx31761-31833).

CONFIDENTIAL NONCONFIDENTIAL
MATERIAL OMITTED

**B.    Appellants' Claim That The Commission Ignored Record Evidence Is Belied by the Agency's Findings**

Appellants next argue the Commission failed to acknowledge contradictory record evidence that inventories of Vietnamese honey were sold off and consumed prior to issuance of the antidumping duty order.  Appellants' Br. at 39-41.  They also argue that the Commission ignored record evidence contradicting allegations that end users "stockpiled" raw honey.  *Id.* at 41-43.

Appellants are wrong that the Commission failed to consider "contradictory" record evidence regarding the volumes of honey in inventory.   In fact, the Commission analyzed the precise information provided in Appellants' posthearing brief, including affidavits from certain purchasers of Vietnamese honey. Appx541-542 and nn.305-306.  The Commission explained:

> Respondents argue that importers have now sold off much of their inventory, but regardless of where the imported honey is in the supply chain, the volume associated with these inventories is large and increased substantially in the post-petition period and is likely to place downward pressure on prices until it is consumed by end users, particularly given the continued underselling by subject imports from Vietnam at wide margins.

Appx541.  Reviewing the affidavit submitted by [ name ] specifically, the Commission observed that the company's claim [ questionnaire data ] was inconsistent with the actual [ questionnaire data

**]**  Appx541-42 n.306 (detailing additional confidential findings with respect to this company).  The Commission's findings show that it considered the evidence submitted by Appellants, which continued to demonstrate the presence of significant inventories in March 2022.  *Id.*  Contrary to Appellants' claims that the Commission ignored this evidence regarding 2022 inventory levels, the Commission's findings were grounded in the record evidence.

Furthermore, Appellants ignore the fact that their submitted affidavits account for **[ # ]** than **[ # ]** of the purchasers of Vietnamese raw honey, and thus fail to paint a complete and accurate picture of Vietnamese honey inventory levels in March 2022.[12]  *See* NHPDA Posthrg. Brf. at 14-15, and Exhs. 3B and 4 (Appx31712-13, Appx31763-833).  Amazingly, Appellants even failed to provide data for certain companies *that actively participated in the investigation.*  Appx542 n.306.  For example, absent from Plaintiffs' submission is inventory information for **[**          company name

**]**  Thus, while record evidence continued to show significant inventory levels into 2022, as the Commission found, even that

---

[12]  As the CIT recognized, Appellants' arguments are confusing and contradictory. On the one hand, Appellants have claimed that the record is "missing" relevant inventory data (*see* Section III.A *supra*; *see also* Appellant Br. at 35-36).  On the other hand, they argued that "importers and packers provided a full set of inventory data relating to inventory levels of the critical circumstances entries."  Appx23 (citing Plaintiffs' CIT Reply Br. at 15).

evidence was incomplete and underreported actual inventory levels. Missing inventory data from [   name   ] and other packers that chose not to provide that data presumably would reveal even higher inventory levels in March 2022 than those disclosed on the record.

To the extent inventory data *within Appellants' possession* is missing from the record, that is of their own doing. The burden of production in a Commission proceeding falls squarely on the party in possession of the information, such that Appellants were obligated to develop the record and submit inventory data in their possession. *See Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of production should belong to the party in possession of the necessary information.") (citing *Industrial Fasteners Group, Am. Importers Ass'n v. United States,* 710 F.2d 1576, 1582 n.10 (Fed. Cir. 1983)). The select inventory data Appellants submitted in their posthearing brief pertained to only certain importers or packers and were missing data from certain parties that even participated in the Commission's hearing and were represented by counsel, including [   name   ] as noted above. Appellants had ample opportunity to submit any data they viewed as important or relevant to the investigation.

Finally, Appellants' argument that the Commission ignored record evidence contradicting allegations that end users "stockpiled" raw honey is also misguided.

Appellants' Br. at 41-43. Appellants present an incomplete picture of the Commission's finding, which the Court should review in its full form in the confidential footnote found at Appx542 n.306. The Commission did not "simply accept" Petitioners' allegation and rely on that evidence in its analysis. Instead, the Commission acknowledged the allegation was on the record and stated that Appellants submitted nothing to refute it even though the ingredient purchasers, including [      name      ] actively participated in the final phase of the investigations and were witnesses at the Commission's hearing, and thus were in the position to submit any evidence they deemed relevant to the Commission's analysis. *Id.*

Accordingly, Appellants are simply wrong that the Commission's finding is not supported by substantial evidence and that the Commission failed to adequately consider all record evidence in reaching its decision.

NONCONFIDENTIAL

## III. <u>CONCLUSION</u>

For the forgoing reasons, Defendants-Appellees respectfully request that this Court affirm the Commission's *Final Determination* finding that affirmative critical circumstances exist with respect to imports of raw honey from Vietnam.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ Melissa M. Brewer
R. ALAN LUBERDA
KATHLEEN W. CANNON
MELISSA M. BREWER

KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendants-Appellees

</div>

Dated: July 19, 2024

-37-

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2024-1370, 2024-1371

**Short Case Caption:** Sweet Harvest Foods v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __7,992__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 07/19/2024

Signature: /s/ Melissa M. Brewer

Name: Melissa M. Brewer