# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SWEET HARVEST FOODS, EXPORT PACKERS COMPANY LTD., HONEY HOLDING I, DBA HONEY SOLUTIONS, SUNLAND TRADING INC., NATIONAL HONEY PACKERS & DEALERS ASSOCIATION,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

AMERICAN HONEY PRODUCERS ASSOCIATION, SIOUX HONEY ASSOCIATION,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in Consol. Case No. 1:22-CV-00188
Senior Judge Leo M. Gordon

## JOINT REPLY BRIEF OF PLAINTIFFS-APPELLANTS
## NON-CONFIDENTIAL VERSION

Gregory Husisian
FOLEY & LARDNER LLP
Suite 600
3000 K Street NW
Washington DC, 20007
(202) 945-6149

Counsel to Plaintiffs-Appellants Sweet Harvest Foods, Export Packers Company Ltd., Honey Holding I, dba Honey Solutions, Sunland Trading Inc.

Gregory J. Spak
Ron Kendler
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Plaintiff-Appellant National Honey Packers & Dealers Association

August 23, 2024

Pursuant to Federal Circuit Rule 28(d)(2)(B), this brief contains confidential material that has been omitted. The material omitted on page 27 and 28 concerns inventory percentage figures and information. The material omitted on pages 28 and 30 concerns participating company and end-user names and information.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

SUMMARY OF REPLY ........................................................................2

ARGUMENT .........................................................................................3

I.   DEFENDANTS-APPELLEES' RESPONSES MISCHARACTERIZE CLEAR STAUTORY LANGUAGE AND LEGAL STANDARDS ........3

    A.   The Government Ignores Crucial Statutory Language Regarding Imports Made During the 90-Day Period .........................................4

    B.   Defendants-Appellees' Arguments Concerning the "Effective Date" of the Order Disregard the Plain Language of the Statute and Misapply the SAA ...................................................................6

    C.   The Government's Arguments Concerning Inventories Overlooks Explicit Statutory Language and Rely on Illogical Claims...........................................................................................12

II.  RECENT, CONTROLLING PRECEDENT, WHICH DEFENDANTS-APPELLEES DOWNPLAY, FURTHER JUSTIFIES REMAND TO THE AGENCY ..............................................................17

III. DEFENDANTS-APPELLEES FAIL TO ESTABLISH THAT THE COMMISSION'S DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE..............................................................20

    A.   Defendants-Appellees Mischaracterize the Record and Relevant Precedent with Respect to Missing Inventory Information ..........20

    B.   Despite Defendants-Appellees' Arguments, The Record Makes Clear that the Commission Failed to Consider Relevant Evidence ......................................................................................25

C.    Defendants-Appellees' Responses Concerning Petitioners'
      Allegation of "Stockpiling" Mischaracterize Parties' Abilities to
      Respond to the Allegation Itself....................................................28

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allegheny Ludlum Corp. v. United States*,
  287 F.3d 1365 (Fed. Cir. 2002) .......................................................................22

*Am. Silicon Techs. v. United States*,
  334 F.3d 1033 (Fed. Cir. 2003) .......................................................................18

*Anvar v. Dwyer*,
  82 F.4th 1 (1st Cir. 2023)..................................................................................24

*Dak Ams. LLC v. United States*,
  456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ...................................................22

*Jiaxing Brother Fastener Co. v. United States*,
  380 F. Supp. 3d 1343 (Ct. Int'l Trade 2019) ...................................................27

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. ___, 144 S. Ct. 2244 (June 28, 2024) .........................................18, 19

*Mitsubishi Elec. Corp. v. United States*,
  700 F. Supp. 538 (Ct. Int'l Trade 1988) ..........................................................22

*Mittal Steel Point Lisas Ltd. v. United States*,
  548 F.3d 1375 (Fed. Cir. 2008) .......................................................................21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.
  Co.*,
  463 U.S. 29 (1983)............................................................................................27

*Nan Ya Plastics Corp. v. United States*,
  810 F.3d 1333 (Fed. Cir. 2016) .......................................................................25

*Skidmore & Swift Co.*,
  323 U.S. 134 (1944)......................................................................................18, 19

*Stauffer v. Brooks Bros. Grp, Inc.*,
  758 F.3d 1314 (Fed. Cir. 2014) .......................................................................24

*United States v. Great Am. Ins. Co.*,
    738 F.3d 1320 (Fed. Cir. 2013) ...................................................24, 25

*USEC v. United States*,
    34 F. App'x 725 (Fed. Cir. 2002) ....................................................27

## STATUTES AND REGULATIONS

19 U.S.C. § 1673b(e)(2)(A) ...............................................................5

19 U.S.C. § 1673d(a)(3) .................................................................4, 12

19 U.S.C. § 1673d(a)(3)(B) ...............................................................5

19 U.S.C. § 1673d(b)(4)(A) ..............................................................12

19 U.S.C. § 1673d(b)(4)(A)(i) ............................................................5

19 U.S.C. § 1673d(b)(4)(A)(ii) ...........................................................3

19 U.S.C. § 1673d(b)(4)(A)(ii)(II) ................................................12, 18

19 U.S.C. § 1673e ...........................................................................8

19 U.S.C. § 1677(9) ........................................................................30

19 C.F.R. § 207.7(a)(3)(i) ................................................................30

19 C.F.R. §§ 207.25, 207.30(b) .......................................................29

19 C.F.R. § 207.30 .........................................................................29

## LEGISLATIVE MATERIALS

Statement of Administrative Action accompanying the Uruguay
    Round Agreements Act,
    H.R. Rep. No. 103-826(I),
    *reprinted in* 1994 U.S.C.C.A.N. 4040 .........................................passim

# ADMINISTRATIVE DETERMINATIONS

*Raw Honey From Argentina, Brazil, India, and the Socialist Republic of Vietnam: Antidumping Duty Order*s,
87 Fed. Reg. 35,501 (June 10, 2022)....................................................................8

*Raw Honey From Argentina, Brazil, India, and Vietnam*,
87 Fed. Reg. 33,831 (June 3, 2022)....................................................................8

*Raw Honey From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Critical Circumstances in the Less-Than-Fair-Value Investigation*,
87 Fed. Reg. 2,127 (Jan. 13, 2022)................................................................6, 21

# INTRODUCTION

Plaintiffs-Appellants Export Packers Company Ltd., ("Export Packers"), Honey Holding I, dba Honey Solutions ("Honey Solutions"), Sunland Trading Inc. ("Sunland"), and Sweet Harvest Foods ("Sweet Harvest") (collectively, the "Individual Importers"), and the National Honey Packers and Dealers Association ("NHPDA") (collectively, "Plaintiffs-Appellants") reply to the Response Brief of Defendant-Appellee the United States ("Government") (ECF 38, 39) ("Gov't Br.") and to the Response Brief of Defendants-Appellees American Honey Producers Association and Sioux Honey Association (collectively, "Petitioners") (ECF 33, 34) ("Petrs. Br.") in this appeal.  For consistency, we refer to parties and underlying documents from the administrative record using the abbreviated names set forth in the Opening Brief of the Plaintiffs-Appellants (ECF 29, 30) ("Opening Br.").

## SUMMARY OF REPLY

**Issue 1:**  The Commission's affirmative critical circumstances determination with respect to Vietnam is contrary to law.  The statute directs the Commission to assess whether imports made during the 90-day critical circumstances period are likely to "undermine seriously the remedial effect of the order to be issued" – an inherently forward-looking analysis.  In response, Defendants-Appellees attempt to undermine this clear statutory language through various arguments, such as citing to unrelated, irrelevant statutory provisions and redefining relevant terms found in the statute and the Statement of Administrative Action ("SAA").  In doing so, they contravene the plain language and logic of the statute.

**Issue 2:**  The Commission's affirmative critical circumstances determination was unsupported by substantial evidence.  Plaintiffs-Appellants have demonstrated that the Commission relied on conclusory assertions and speculation with respect to inventories of critical circumstances, and otherwise failed to take contrary evidence into account when evaluating Petitioners' unfounded claims of "stockpiling." Defendants-Appellees' responses mischaracterize the record, relevant precedent, and parties' abilities to respond to this allegation before the Commission.

## ARGUMENT

**I.    DEFENDANTS-APPELLEES' RESPONSES MISCHARACTERIZE CLEAR STAUTORY LANGUAGE AND LEGAL STANDARDS**

Plaintiffs-Appellants' argument is simple:  when Congress stated that the Commission can issue an affirmative critical circumstances determination only if "the imports subject to the {Department of Commerce's ("Commerce")} affirmative {critical circumstances determination} . . . are likely to undermine seriously the remedial effect of the antidumping order to be issued," 19 U.S.C. § 1673d(b)(4)(A)(ii), Congress meant exactly that.  Congress intentionally used a forward-looking construction ("likely" and "to be issued") to focus on the potential impact of the critical circumstances entries on the "order to be issued."

Defendants-Appellees' arguments in response essentially rewrite the statute. They invoke other statutory provisions relating to provisional measures; redefine the "effective date" of the order; and attempt to use the Statement of Administrative Action ("SAA") to contravene the plain language of the statute.

These efforts are unavailing because Congress was well aware of the meaning of the terms at issue, including "order" and "provisional measures," as well as the concept of the suspension of liquidation.  Congress chose to use the explicit words "remedial effect of the ***antidumping order to be issued***."  For this reason alone, Defendants-Appellees' arguments are unavailing, as detailed in Plaintiffs-

3

Appellants' Opening Brief. Further, even if one were to accept Defendants-Appellees' basic premise, their responses still fail, as explained below.

## A. The Government Ignores Crucial Statutory Language Regarding Imports Made During the 90-Day Period

The statute "directs the Commission to assess whether the imports made during the 90-day critical circumstances period are likely to 'undermine seriously the remedial effect of the order to be issued.'" Opening Br. at 12. According to Defendants-Appellees, because the Commission must analyze the impact of the entries "that are subject to Commerce's critical circumstances finding," *see*, *e.g.*, Gov't Br. at 35, the Commission should evaluate the impact of all entries starting from "April 2021 with the filing of the petition and {running} until suspension of liquidation in November 2021," *id.* at 36, rather than the 90 days of entries that are (in the words of the statute) potentially "subject to" critical circumstances duties. *See also* Petrs. Br. at 25-26. This argument misreads the statute.

To support its argument that the Commission should examine entries from the period April–November 2021, the Government relies on statutory language stating that the "Commission shall include a finding as to whether *the imports subject to the affirmative determination under subsection (a)(3)* are likely to undermine seriously the remedial effect of the antidumping duty order to be issued." *Id.* at 35 (emphasis original). Yet, subsection (a)(3), *i.e.*, 19 U.S.C. § 1673d(a)(3), concerns the matter of Commerce's final critical circumstances determination and the analysis

Commerce must undertake to reach that determination; it contains no directive regarding the time period Commerce should analyze, other than to state that Commerce should consider whether there have been "massive imports of the subject merchandise over a relatively short period." 19 U.S.C. § 1673d(a)(3)(B).

Defendants-Appellees argue the Commission examined the same period (*i.e.*, April-November 2021) as the "relatively short period" examined by Commerce. *See* Gov't Br. at 36. But neither the Government nor Petitioners account for the key language in the statute – that the Commission must reach "a finding as to whether the imports *subject to* the affirmative determination in subsection (a)(3) are likely to undermine seriously the remedial effect of the antidumping duty order to be issued." 19 U.S.C. § 1673d(b)(4)(A)(i) (emphasis added).

That is, the period that Commerce analyzes to *make* its critical circumstances finding (*i.e.*, those that increase over the "relatively short period") is unrelated to the period that the Commission must evaluate, which relates to entries that are "subject to" that finding (*i.e.*, the 90-day period preceding suspension of liquidation). 19 U.S.C. § 1673d(b)(4)(A)(i). The statute explicitly defines those entries: pursuant to section 1673b(e)(2)(A), Commerce's critical circumstances determination "shall apply . . . to unliquidated entries of merchandise entered, or withdrawn from warehouse, for consumption on or after . . . the date which is *90 days before*" the suspension of liquidation. 19 U.S.C. § 1673b(e)(2)(A) (emphasis added).

Likewise, Commerce explicitly identified the exact entries that are "subject to" its findings in its *Federal Register* notice announcing its preliminary critical circumstances determination:

> In accordance with section 703(e)(2)(A) of the Act, we are directing the U.S. Customs and Border Protection to suspend liquidation of any unliquidated entries of the merchandise under consideration from Vietnam entered, or withdrawn from warehouse for consumption, on or after August 25, 2021, which is 90 days prior to the date of publication of the *Preliminary Determination* in the Federal Register.

*Raw Honey From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Critical Circumstances in the Less-Than-Fair-Value Investigation*, 87 Fed. Reg. 2,127, 2,130 (Jan. 13, 2022) (emphasis original).

Thus, while Commerce chose to analyze entries going all the way back to April 2021 (the month the petition was filed) to determine whether there was a "massive increase" in the subject entries, this has no bearing on the entries that are "subject to" its determination. The language of the statute and Commerce's practice make clear that the entries "subject to" its determination are those made during the 90-day critical circumstances period.

**B.    Defendants-Appellees' Arguments Concerning the "Effective Date" of the Order Disregard the Plain Language of the Statute and Misapply the SAA**

The statute requires the Commission to determine the effect of any critical circumstances entries on the "antidumping order to be issued." The SAA, in turn, makes clear that the critical circumstances analysis should focus on "whether an

order's effectiveness is undermined by increasing shipments prior to the effective date of the order." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-826(I), at 877, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4206 ("SAA"). The Government avers that it is a "mistaken premise that the antidumping duty order was not effective until issued," based upon the fact that the collection of provisional measures begins when the preliminary determination is issued. Gov't Br. at 40; *see also* Petrs. Br. at 3.

This argument disregards the plain language of the statute. When Congress stated that the Commission could issue an affirmative critical circumstances determination only if the record contains evidence demonstrating that the critical circumstances entries would "undermine seriously" the "remedial effect of the antidumping *order* to be issued," Congress meant exactly what it said. If it meant to say that the Commission's task was to evaluate whether the entries would undermine "the *provisional measures* already *in place*," then it would have written the statute accordingly.

The Government attempts to support its argument through citation to the SAA, but such attempts cannot change the statutory language. Nor is the Government's argument consistent with the statutory scheme. For example, the Government claims the SAA refers to the "effective date" of the order to distinguish the "issuance date" of the order. *See* Gov't Br. at 41. But the issuance date of an

antidumping order is when Commerce publishes the antidumping order in the *Federal Register*. The "effective date" is the date on which Commerce directs Customs and Border Protection ("CBP") to collect antidumping duty deposits at the rates established in Commerce's final determination. *See Raw Honey From Argentina, Brazil, India, and the Socialist Republic of Vietnam: Antidumping Duty Order*s, 87 Fed. Reg. 35,501 (June 10, 2022) ("Accordingly, effective on the date of publication in the Federal Register of the notice of the ITC's final affirmative injury determination, CBP will require … a cash deposit equal to the rates listed below.").

In this case (as in most cases), the difference between the order's "issuance date" and the "effective date" of the cash deposits finally determined by Commerce is a matter of only seven days. *Compare id. with Raw Honey From Argentina, Brazil, India, and Vietnam*, 87 Fed. Reg. 33,831 (June 3, 2022). There is no support for the notion that the technical distinction between issuance date and effective date was intended to change the meaning of the critical circumstances provision, the language of which is clear and refers to neither date.

The Government further contends that, because the critical circumstances provision refers to 19 U.S.C. § 1673e, and a subsection of that provision refers to the imposition of provisional measures "as of suspension of liquidation," then "effective date of the order" refers to the imposition of preliminary measures. *See* Gov't Br. at 42-43. This argument is meritless. The purpose of section 1673e, titled

"Assessment of duty," is to direct which entries should be subject to antidumping duties. It is unrelated to how the Commission conducts its critical circumstances analysis. Those topics are covered entirely within the critical circumstances provision itself, and a general reference to the provision that provides the authority to issue an antidumping duty order to require the general collection of cash deposits does not alter the structure or meaning of the statute.

The Government makes several other attempts to use the SAA to supposedly show that the language of the statute does not mean what it says. First, the Government claims that "effective date of the order" under the SAA refers to the date of imposition of provisional measures because it provides that "national authorities may apply definitive antidumping duties from the date of application of provisional measures if the final injury determination is based on present material injury." *Id.* at 43 (quoting SAA at 816). Yet this language, too, refers to the overall administration, and ultimate imposition, of an antidumping duty order; it has no relevance to the Commission's critical circumstances analysis.

Second, the Government claims that Plaintiffs-Appellants consider the SAA "irrelevant." *Id.* at 32. This assertion mischaracterizes the Opening Brief, in which Plaintiffs-Appellants specifically discussed the SAA's language and detailed why specific, relevant sections of the SAA support the plain language of the statute. *See* Opening Br. at 5-6. Plaintiffs-Appellants further explained how and why the CIT

cited to *other* language from the SAA, and why such language relating to the "surge" analysis was irrelevant. *See id*. at 29-30. Plaintiff-Appellants did not fail "to address the SAA or the lower court's analysis" thereof. Gov't Br. at 32.

Third, the Government repeatedly conflates different sections of the SAA in an attempt to argue that the "effective date of the order" does not mean exactly that. Throughout its response brief, the Government cites to language in the SAA that uses language *other than* "effective date of the order" to argue that this phrase, in fact, refers to the "effective date of relief," *i.e.*, the imposition of provisional measures, which likewise refers to the "suspension of liquidation." *See*, *e.g.*, *id.* at 7-8, 41-44, 58. Such language deals with, for example, how the Commission should handle the analysis of any "surge" in imports, an issue that was not appealed and is not relevant to this case. *See id.* at 7-8, 36, and 44. That issue, and the related language, has no connection to the relevant issue in this appeal, which is whether the entries that can be subject to the critical circumstances finding (and, in particular, inventories of those entries) will undermine the remedial effect of the order "prior to the effective date of *the order*" – language that the SAA explicitly uses elsewhere when discussing critical circumstances. *See* SAA at 877.

Indeed, this can best be understood by reviewing the excerpt of the relevant page of the SAA:

> With regard to Commission determinations, the legislation clarifies that the Commission is to determine whether the ***surge in imports prior to***

> ***suspension of liquidation***, rather than the failure to provide retroactive relief, is likely to seriously undermine the remedial effect of the order . . . .
>
> Critical circumstances determinations focus on whether an order's effectiveness is undermined by increasing shipments ***prior to the effective date of the order*** . . . .
>
> {T}he Commission is . . . required to determine whether, by ***massively increasing imports prior to the effective date of relief***, the importers have seriously undermined the remedial effect of the order.

*Id.* (emphasis added). In particular, language in the SAA concerning whether there has been a "surge" in imports links this question to "suspension of liquidation," while the issue of the "massive increase in imports" relates to the "effective date of relief." Neither of these concerns inventories specifically, or the general aim of the critical circumstances provision with respect to the "effective date of the order" – which, as seen above, is used elsewhere on the same page of the SAA.

Consequently, the SAA in fact undermines the Government's theory because it shows an appreciation for the difference between the concept of suspension of liquidation (which occurs at the time of Commerce's preliminary determination), the related concept of "effective date of relief," and the "effective date of the order." The latter term has a specific meaning in the statute, and the attempt to change that meaning by reference to the word "relief" must fail.

Finally, the Government otherwise cites to and discusses SAA language regarding Commerce's critical circumstances analysis. *See*, *e.g.*, Gov't Br. at 28. Any reference to the SAA regarding Commerce's role in the critical circumstances

process is irrelevant. This appeal is limited to a specific element of the Commission's analysis, which is separate and substantively distinct from that of Commerce. *Compare* 19 U.S.C. § 1673d(b)(4)(A) (delineating the factors for the Commission to consider in its critical circumstances analysis) *with* 19 U.S.C. § 1673d(a)(3) (delineating the factors for Commerce to consider in its critical circumstances analysis).

### C. The Government's Arguments Concerning Inventories Overlooks Explicit Statutory Language and Rely on Illogical Claims

The Commission's analysis of inventory levels – undertaken as part of the requisite statutory analysis to consider "a rapid increase in inventories of the imports" – renders its decision contrary to law. *See* 19 U.S.C. § 1673d(b)(4)(A)(ii)(II); Opening Br. at 20-25. Defendants-Appellees respond by accusing Plaintiffs-Appellants of "rewriting" the statute. *See*, *e.g.*, Gov't Br. at 20-21, 37-39; Petrs. Br. at 18-22. According to both Defendants-Appellees, the concept of "inventory levels" has no bearing on the analysis, because the statute does not include these exact words.

As an initial matter, Defendants-Appellees omit that the Commission itself analyzed inventory levels when making its critical circumstances determination. *See* Appx537-538. The Commission also separately analyzed the inventory levels of several individual importers of Vietnamese raw honey. *See* Appx539, n.299.

The Government claims that the Commission must analyze any ***increase*** in inventories but has complete discretion to consider (or not) any ***declines*** in inventories. Gov't Br. at 38. The Government justifies this supposed dichotomy by noting that the statute directs that the Commission consider whether there has been a "rapid increase" in inventories of critical circumstances entries. *See id.* at 38. The Government further claims that because "imports subject to Commerce's critical circumstances determination only enter prior to suspension of liquidation," the period "prior to suspension of liquidation must be the time for the Commission to consider the increase in inventories." *Id.* at 21.

To reach this construction, the Government relies on four arguments. Each one ignores plain language and the logic inherent to the statute.

First, the Government claims inventory levels need to be examined by the Commission at the time of the suspension of liquidation because the supposed "effective date of the order is at the suspension of liquidation." As discussed above in Section I.B, such a construction is contrary to the statute and the SAA.

Once one recognizes that the statute requires the Commission to assess whether the critical circumstances entries would "undermine seriously" the remedial effect of the "order to be issued," the only logical construction of the statute is to look at the inventory ***levels*** that remain. This is not only laid out in Plaintiffs'

Opening Brief; it also is how the dissent analyzed the same issue. *See* Opening Br. at 18-19; Appx552-553.

Second, the Government repeatedly claims that the statutory language regarding "a rapid increase in inventories" means that the effect of such imports needs to be evaluated *only* during a time frame during which it is logically possible for imports to increase:

> There is no ambiguity concerning when the increase should be evaluated. The imports considered by Commerce and the Commission only enter after the filing of the petition and prior to suspension of liquidation, so this is the only period in which "a rapid increase in inventories of the imports" subject to Commerce's critical circumstances determination could occur.

Gov't Br. at 29. The Government accordingly concludes that "{t}he statute's specific reference to the 'increase in inventories of the imports' indicates that the Commission is to evaluate the increase prior to suspension of liquidation." *Id.* at 27.

This construction of the statute ignores the fact that "inventory levels" require an analysis of both additions to, as well as sales out of, inventories. In fact, the Commission itself took *both* increases and decreases in inventories into account. *See* Appx537-539. The Commission evaluated whether there had been an increase in critical circumstances inventories by comparing inventory levels in the pre- and post-petition periods. *See* Appx537-538. Such a comparison inherently takes into account both additions to inventories (through imports) and subtractions (through sales), as "inventory levels" necessarily reflect the net amount remaining at the time

14

of measurement. The Commission's own determination belies any claim that the Commission should consider only "increases" in inventory levels.

There also is no logical reason why the time period during which the Commission evaluates critical circumstances must coincide with the time period when such imports might be increasing. As noted above, the Commission must evaluate whether the critical circumstances entries would "undermine seriously" the remedial effect of the antidumping duty order "to be issued." Respecting this plain language, the only logical conclusion is that if imports (whenever they entered) are sold off before the antidumping order is issued, then there are no remaining inventories that would undermine the "remedial effect of {that} order." *See* Opening Br. at 24.

Third, the Government argues the Commission is required to examine critical circumstances inventories in "the post-petition period prior to suspension of liquidation and imposition of provisional duties" because these "imports coincide with the period for which Commerce makes its finding of critical circumstances." Gov't Br. at 28. Yet as discussed in Section I.A above, the entries "subject to" Commerce's critical circumstances determination are those made during the 90-day period preceding suspension of liquidation.

Finally, the Government argues that Plaintiffs-Appellants' "interpretation of the statute would lead to an incongruous result that would render the rapidly-

increasing inventory provision meaningless" because, after suspension of liquidation, the level of critical circumstances entries "inevitably would never be increasing," thereby making "the consideration of whether imports rapidly increased . . . a nullity." *Id.* at 30.

The logic behind this claim is difficult to discern. As noted above, the Commission itself took into account all decreases in inventories, right up to October 31, 2021 (the last day it evaluated). Doing the exact same analysis, only up until the time of the final determination, would not alter how the statute is applied. Moreover, if there is a rapid increase in critical circumstances inventories, ***and*** sufficient critical circumstances entries remain at the time of the final determination to support a finding that those entries are in a position to "undermine seriously" the remedial effect of the order, then of course the Commission could follow the statute and issue an affirmative critical circumstances determination. The statute would not be rendered a "nullity." Thus, it is incorrect to assert that evaluating inventory levels at any time after the suspension of liquidation would "rob the increasing inventories provision of any meaning." *Id.* at 31.

The Government also claims it would be impermissible to evaluate inventory levels after the suspension of liquidation because they "will necessarily be declining rather than increasing." *Id.* at 21. This is a false choice that ignores the wide range of possible outcomes. While the Government is correct that there can be no more

imports of critical circumstances entries once liquidation has been suspended, there is a range of outcomes that could occur after that point. The critical circumstances entries could be entirely stockpiled, in which case they would remain static; a certain portion could be sold off prior to the issuance of the order, which could leave a large or small amount of entries in inventory; or they could be entirely sold off. It is also possible that Commerce's preliminary determination established such a low deposit rate that imports surged after the suspension of liquidation.

According to the Government, the statute requires the Commission to ignore all of these possible outcomes. Yet, as Plaintiffs-Appellants, as well as the dissent, have explained, if these inventories had been all or nearly all sold off by the effective date of the order, then logically they are not in a position to "seriously undermine" the remedial effect "of the order to be issued." *See* Opening Br. at 19-25; Appx544-547. The Government's construction of the statute, ultimately, would effectively prohibit the Commission from evaluating whether the critical circumstances entries are in a position to undermine the remedial effect of the order to be issued, thereby undermining both the language and purpose of the statute.

## II. RECENT, CONTROLLING PRECEDENT, WHICH DEFENDANTS-APPELLEES DOWNPLAY, FURTHER JUSTIFIES REMAND TO THE AGENCY

The statute is clear that the Commission must conduct a prospective analysis of the imports made during the 90-day period – that is, whether such imports and

inventories thereof are likely to "undermine seriously the remedial effect of the order to be issued." *See* Opening Br. at 16-25. As explained in Sections I.A through I.C above, Defendants-Appellees fail in their attempt to demonstrate otherwise. Their scant response with respect to recent, controlling Supreme Court precedent further underscores why this Court cannot simply repeat and sustain the CIT's analysis.

The Government urges this Court to give "due respect" and "great weight" to the CIT's decision. Gov't Br. at 24. Putting aside the fact that this Court owes the CIT no deference, *Am. Silicon Techs. v. United States*, 334 F.3d 1033, 1037 (Fed. Cir. 2003); Opening Br. at 14, this Court should reject this argument because affirming the CIT would necessitate reliance on a now-outdated legal test.

That is, the CIT upheld the Commission's affirmative critical circumstances determination by deferring to the Commission under *Chevron* step 2. *See* Appx17-18; Opening Br. at 28. Yet as the Government recognizes, *Chevron* no longer applies, having been overturned by the Supreme Court in *Loper Bright Enterprises v. Raimondo*, 603 U.S. ___, 144 S. Ct. 2244 (June 28, 2024). Nevertheless, the Government contends that the CIT's "analysis and interpretation is equally correct under" *Loper Bright* and "*Skidmore & Swift Co.,* 323 U.S. 134 (1944)."[1] It

---

[1] Petitioners argue that *Loper Bright* is "inapplicable" because "the plain language of the statute" contradicts the arguments put forth by Plaintiffs-Appellants. Petrs. Br. at 22 n.7. For the reasons explained in Plaintiffs-Appellants' Opening Brief and throughout this brief, the plain language of the statute makes clear that the Commission's interpretation and application of the inventory provision, 19 U.S.C.

paraphrases *Skidmore* to argue that the Commission's determination was based on "specialized experience," involved "consideration and valid reasoning, was consistent with the agency's approach in other investigations, and is at the minimum persuasive." Gov't Br. at 24-25 (citing *Skidmore*, 323 U.S. at 139-40).

Aside from this passing mention, the Government does not reconcile its request that the Court affirm the CIT, which requires that *Chevron* remain good law, with any post-*Chevron* standard. Summary quotation of *Skidmore* does not establish that the Commission's decision involved "thoroughness" in "consideration" or "validity" in "reasoning" – particularly when that consideration and reasoning ran counter to the plain language of the statute and was based on missing or contrary information. *See Skidmore*, 323 U.S. at 140; Opening Br. at 20-27, 34-44.

The statutory language is clear, and the Commission's affirmative determination violated that language. Should this Court disagree, and like the CIT, find some ambiguity in the statute, it should follow the instruction in *Loper Bright* to reach the "single, best meaning" that it, "after applying all relevant interpretive tools, concludes is best." *Loper Bright*, 603 U.S. at ___, 144 S. Ct. at 2266. That "single, best meaning" establishes that the Commission must conduct a prospective analysis of whether or not inventories of imports made during the 90-day period are

§ 1673d(b)(4)(A)(ii)(II), is contrary to law. *See supra* Sections II.A–II.C; Opening Br. at 16-19.

likely to "undermine seriously the remedial effect of the order to be issued" at the time of the effective date of that order.  *See* Opening Br. at 16-25.

## III. DEFENDANTS-APPELLEES FAIL TO ESTABLISH THAT THE COMMISSION'S DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

The Commission's affirmative critical circumstances determination was unsupported by substantial evidence because it relied on unreasonable assumptions to compensate for missing inventory information.  First, the Commission relied on conclusory assertions and speculation.  Second, it refused to substantively engage with contradictory evidence concerning allegations of "stockpiling" made by the Petitioners after the relevant data had been collected.  *See* Opening Br. at 34-44. Defendants-Appellees' responses are meritless.

### A. Defendants-Appellees Mischaracterize the Record and Relevant Precedent with Respect to Missing Inventory Information

Defendants-Appellees argue that Plaintiffs-Appellants failed to exhaust their administrative remedies regarding inventory levels because they "did not request that the Commission seek inventory data from end users of honey" at the time that the Commission requested that parties propose revisions to its draft questionnaires. *See* Gov't Br. at 53-54; Petrs. Br. at 31-32.  This argument suffers from several fatal flaws.

First, it was impossible to comment on this issue at that time.  The Commission solicited proposed revisions on June 30, 2021, and the deadline for

parties to submit proposals was September 10, 2021. *See* Appx17096-17097;

Appx17248-17252; Appx17263-17265. Petitioners filed their critical circumstances

allegation regarding Vietnam **on December 3, 2021**. *Raw Honey From the Socialist*

*Republic of Vietnam: Preliminary Affirmative Determination of Critical*

*Circumstances in the Less-Than-Fair-Value Investigation*, 87 Fed. Reg. 2,127 (Jan.

13, 2022). Thus, it was not possible for any party to propose questionnaire revisions

enabling the Commission to collect inventory data or to address any other issue

relating to a critical circumstances analysis for Vietnam because no party knew that

this would be an issue for several months. The Court should not entertain an

argument that requires Plaintiffs-Appellants to guess what allegation might appear

months later.

Second, importers and packers in fact submitted inventory-related data,

information, and related argument in Plaintiffs-Appellants' post-hearing brief,

thereby exhausting their administrative remedies. *See* Opening Br. at 20 (citing

Appx31762-31763, Appx31773, Appx31778, Appx31783, Appx31788,

Appx31793, Appx31798, Appx31803, Appx31808, Appx31813, Appx31817,

Appx31820, Appx31824, Appx31829, Appx31833). A party exhausts its

administrative remedies when it raises the issue before an agency "at the time

appropriate under its practice." *See Mittal Steel Point Lisas Ltd. v. United States*,

548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (citations omitted). A party's post-hearing

brief to the Commission meets this requirement. *Dak Ams. LLC v. United States*, 456 F. Supp. 3d 1340, 1358-59 (Ct. Int'l Trade 2020) ("Plaintiffs . . . identified the error in their Post-Hearing Brief . . . . Because Plaintiffs raised the issue at an appropriate time and the Commission had the chance to consider it, the court . . . finds that administrative exhaustion does not bar Plaintiff's challenge") (citations omitted). By raising this issue and submitting evidence in their post-hearing brief, Plaintiffs-Appellants exhausted their administrative remedies.

Third, Defendants-Appellees' arguments fail to respond to the precedent, cited in Plaintiffs-Appellants' Opening Brief, that the Commission may not "actively preclude{} itself from receiving relevant data or take{} no effort to seek relevant data" and is "obligated to make active, reasonable efforts to obtain relevant data." *Id.* at 1360 n.12 (citing in part *Allegheny Ludlum Corp. v. United States*, 287 F.3d 1365, 1373 (Fed. Cir. 2002); *Mitsubishi Elec. Corp. v. United States*, 700 F. Supp. 538, 564 (Ct. Int'l Trade 1988)) (internal quotation marks omitted). Indeed, the Government even concedes that the Commission could have collected such data, even though it then asserts that it was "not practical" for the Commission to collect end user inventory data and "reasonable" to refuse to do so. *See* Gov't Br. at 54-56.

This admission goes directly to what is wrong with the Commission's reasoning, and what it now tells the Court. The fundamental evidentiary issue in this case is that, consistent with the statute, certain inventory data were necessary for the

Commission to conduct its critical circumstances analysis. Once Petitioners made a critical circumstances allegation, it made such information essential for the Commission to complete its analysis. Because that information was missing, the Commission was obligated to pursue it. But the Commission did not do so. It then further disregarded other, relevant data submitted by Plaintiffs-Appellants. *See* Opening Br. at 20-27, 34-44. This approach renders that determination unsupported by substantial evidence. *See id.*

The Government responds by arguing that Plaintiffs-Appellants are responsible for the lack of data; that this alleged culpability precludes consideration of their arguments due to a failure to exhaust; and that, in any event, the Commission should not have collected the data. These arguments are unreasonable on their face.

Separately, Defendants-Appellees claim Plaintiffs-Appellants "abandoned" and "waived" this argument before the CIT. *See* Gov't Br. at 52; Petrs. Br. at 30. In doing so, they mischaracterize the administrative record and the cited precedent.

Importantly, before the CIT, Plaintiffs-Appellants briefed this issue in writing; the conclusion that Plaintiffs-Appellants abandoned it is that of the CIT, based on the statement of counsel at oral argument that Plaintiffs-Appellants were "not pressing the argument" at that time. Gov't Br. at 52; Petrs. Br. at 30 (both quoting Appx23 n.5). None of the cases cited by Defendants-Appellees involves similar

facts. In fact, in each case they cite, the relevant party failed to properly make the argument at all.

The Government cites to three decisions. The Government first quotes *Anvar v. Dwyer*, 82 F.4th 1 (1st Cir. 2023), where plaintiffs "later abandoned" an argument "and therefore, cannot resurrect it on appeal." Gov't Br. at 53 (quoting *Anvar*, 82 F.4th at 7, n.2). Actual review of that case establishes that the First Circuit commented on the fact that plaintiffs raised a challenge ***in their complaint***, which they "later abandoned . . . and therefore, cannot resurrect it on appeal." *Anvar*, 82 F.4th at 7, n.2. Here, Plaintiffs-Appellants fully briefed the issue before the CIT. Next, the Government cites to *Stauffer v. Brooks Bros. Grp, Inc.*, 758 F.3d 1314 (Fed. Cir. 2014) for the proposition that "arguments not properly raised before {the} district court are waived." Gov't Br. at 53 (citation omitted). That case, too, concerned a party that failed to properly raise an issue in briefing. *See Stauffer*, 758 F.3d at 1322 ("Mr. Stauffer did not raise these arguments in his initial response to the district court's show-cause order, but instead waited until his reply brief before the district court to first raise them."). Finally, the Government quotes *United States v. Great Am. Ins. Co.*, 738 F.3d 1320 (Fed. Cir. 2013): it is "well established that arguments that are not appropriately developed in a party's briefing may be waived." Gov't Br. at 53 (quoting *Great Am. Ins. Co.*, 738 F.3d at 1328). Here, the issue that the Government claims Plaintiffs-Appellants to have "abandoned" was

"appropriately developed" in briefing before the lower court – unlike in *Great Am.*, where plaintiff "did not sufficiently develop, or therefore preserve, a claim for prejudgment interest . . . {i}n its summary-judgment filings{.}" 738 F.3d at 1328.

Petitioners cite only to *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016), in which plaintiff "both failed to exhaust its administrative remedies" and waived certain arguments, which it "conceded during oral argument that it had not preserved . . . for appeal." Petrs. Br. at 30 (quoting *Nan Ya*, 810 F.3d at 1350). As explained above, Plaintiffs-Appellants exhausted their administrative remedies. Petitioners also omit that the plaintiff in *Nan Ya* failed to raise the argument in question before either the CIT or this Court – the "oral argument" to which this Court referred was the oral argument before this Court. *See Nan Ya Plastics Corp.*, 810 F.3d at 1333. This Court therefore rejected plaintiff's argument based on "new theories lodged first on appeal." *Id.* (citation omitted). Plaintiffs-Appellants have not proffered any "new theories" before this Court that they did not raise before the CIT.

### B. Despite Defendants-Appellees' Arguments, The Record Makes Clear that the Commission Failed to Consider Relevant Evidence

Plaintiffs-Appellants have demonstrated that, in the absence of relevant inventory data, the Commission relied on various conclusory assertions and speculation to reach its affirmative critical circumstances determination, ignoring

other relevant record evidence. *See* Opening Br. at 37-41. The Government and Petitioners unconvincingly respond that the Commission considered such evidence.

For example, both Defendants-Appellees argue that the Commission "discussed importers' inventories in 2022" but "rejected Appellants' contention that declining importers' inventories meant that the raw honey had been consumed and was not undermining the order's effect" because it "found the raw honey was likely still in the supply chain." to Gov't Br. at 47; *see also* Petrs. Br. at 33. This is circular reasoning. As explained in Plaintiffs-Appellants' Opening Brief, various elements of this conclusion were not based on concrete record evidence, but rather speculation. *See* Opening Br. at 37-41.

For example, there was *no* evidence that the inventories in question were "in the supply chain." Affidavits and inventory data submitted by Plaintiffs-Appellants indicated that they had been sold into the market and consumed, and the Commission's determination, tellingly, cites no evidence to the contrary. *See* Opening Br. at 38-39; Appx29680; Appx31781, Appx31806, Appx31811, Appx31816, Appx31819, Appx31823, Appx31832. As the dissent notes:

> The record lacks evidence that could resolve the exact size of any diminished amount of unfairly traded merchandise that might remain, such as evidence regarding final inventory levels of most importers and purchasers, the propensity of end users to hold inventory, actual consumption, and the rate at which fairly traded imports arrived immediately before the order to replace unfairly traded ones.

Appx552-553.  Furthermore, Plaintiffs-Appellants' data established that both during the 90-day period, or between that period and March 2022 (*i.e.*, as contemporaneous as possible to before the order was issued), inventories of raw honey from Vietnam had fallen by [ % ] percent for importers and by [ % ] percent for packers.  *See* Appx31762-31763.

Elsewhere, the Government makes a series of easily refuted claims and arguments regarding the Commission's review of evidence (or lack thereof).  For example, it argues the Commission found "inventory data" related to the period from April 2021 to October 2021 was "more probative than importers' self-serving declarations" – further arguing that the Commission "is not required to explicitly address every piece of evidence presented by the parties."  Gov't Br. at 49 (*quoting USEC v. United States*, 34 F. App'x 725, 730 (Fed. Cir. 2002)).  Yet, the Commission cannot disregard evidence concerning "an important aspect of the problem" as doing so renders the agency decision unsupported by substantial evidence.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Jiaxing Brother Fastener Co. v. United States*, 380 F. Supp. 3d 1343, 1360-61 n.26 (Ct. Int'l Trade 2019).  By elevating less relevant, outdated inventory data over contemporaneous packer and importer information, that is exactly what the Commission did here.

Finally, Petitioners argue that the inventory data submitted by Plaintiffs-Appellants is unreliable because, they allege, the "submitted affidavits account for [ Comparison ] than [ Num. ] of the purchasers of Vietnamese raw honey, and thus fail to paint a complete and accurate picture of Vietnamese honey inventory levels in March 2022." Petrs. Br. at 34. To support this claim, Petitioners note that Plaintiffs-Appellants "amazingly . . . failed to provide data for certain companies that actively participated in the investigation," citing only to [ Company Name and Information

]. *Id.* (citation omitted).

Petitioners again omit key information. In multiple submissions to the Commission, [ Company ] reported **no imports of raw honey from Vietnam**. *See* Appx23374, Appx23404-23407; Appx31365. There was, therefore, no reason for this party to submit an affidavit. The Court should reject Petitioners' misdirection, which does nothing to address the Commission's casting aside of Plaintiffs-Appellants' relevant and probative data.

**C.     Defendants-Appellees' Responses Concerning Petitioners' Allegation of "Stockpiling" Mischaracterize Parties' Abilities to Respond to the Allegation Itself**

Plaintiffs-Appellants have demonstrated how, in reaching its affirmative critical circumstances determination, the Commission highlighted Petitioners' allegation that end user [ Company ] "stockpiled" raw honey from Vietnam – even though this allegation was unsupported by the record. *See* Opening Br. at 41-

44; Appx541-542, n.306.  Attempting to justify the Commission's reliance on this unsupported allegation, Defendants-Appellees mischaracterize the proceeding.

The Government avers that "the Commission never found that end users were hoarding raw honey" but rather, "specifically indicated that the record did not show the level of end users' inventories" and "simply noted that large industrial users could have provided information or even commented on their holdings of raw honey from Vietnam in 2022 to shed light on the issue." Gov't Br. at 51.  The Government is wrong.  The allegation of end user stockpiling first arose in Petitioners' post-hearing brief, which is the last opportunity for any party to submit new information to the Commission.  *See* 19 C.F.R. §§ 207.25, 207.30(b); Opening Br. at 41, Appx31464.  End users could not have "provided information" in response, because doing so was prohibited by the Commission's rules.

Nor could the end users have otherwise "commented on their holdings of raw honey." Gov't Br. at 51.  The regulation provides parties a singular opportunity to submit "final comments" after the submission of post-hearing briefs.  19 C.F.R. § 207.30.  Importantly, such comments may not contain any new factual information. *See id.*  It is difficult to see how end users could "comment on" data that were not on the record (as the Commission recognized), and at that point, the end users themselves were prohibited from submitting.

Further, crucial details of Petitioners' stockpiling allegation were confidential. *See* Appx31464. As purchasers of the subject merchandise, the end users (under the relevant Commission regulations and statutory definitions) did not have access to confidential information issued under the Commission's administrative protective order ("APO"). *See* 19 C.F.R. § 207.7(a)(3)(i) (providing that only representatives of "an interested party which is a party to the investigation" may apply for APO access); 19 U.S.C. § 1677(9) (defining the various types of interested parties, which do not include purchasers or end users). The end users cannot comment on information they cannot see.

Similarly, Petitioners assert that Plaintiffs-Appellants "submitted nothing to refute" the stockpiling allegation, "even though the ingredient purchasers, including [ Company ] actively participated in the final phase of the investigations . . . and thus were in the position to submit any evidence they deemed relevant to the Commission's analysis." Petrs. Br. at 35-36. As noted above, end users were procedurally barred from submitting "any evidence they deemed relevant" because Petitioners raised this issue at the eleventh hour. Moreover, Petitioners' suggestion that Plaintiffs-Appellants in particular could have submitted [ Company ] (or any other end users') inventory information is misplaced. [ Conmpany ] was represented by different counsel than Plaintiffs-Appellants, who are importers and packers (not end users). *See* Appx18431-18433. In fact, Plaintiffs-Appellants **did**

respond to this argument in their final comments – thereby contesting it to the fullest extent possible given procedural constraints. *See* Appx36987.

Ultimately, Defendants-Appellees' repeated insistence that either the end users or Plaintiff-Appellants should – or even could – have somehow responded to Petitioners' last-minute stockpiling allegation attempts to distract the Court from the main issue: the Commission relied on this unsupported allegation to burnish the conclusion that entries were "in the supply chain" and reach an affirmative critical circumstances determination. In doing so, the Commission refused to engage with contrary record evidence that Plaintiffs-Appellants cited and that the dissent recognized. *See* Opening Br. at 41-44; Appx546; Appx37606-37608. Such refusal renders that determination unsupported by substantial evidence.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, the Commission's affirmative critical circumstances determination with respect to imports of raw honey from Vietnam was contrary to law and unsupported by substantial evidence on the record. The Individual Importers and the NHPDA respectfully request that the Court reverse the CIT's decision, and remand to the Commission with instructions to issue a negative determination, consistent with the Court's opinion.

Respectfully submitted,

/s/ Gregory Husisian
Gregory Husisian
FOLEY & LARDNER LLP
Suite 600
3000 K Street NW
Washington DC, 20007
(202) 945-6149

Counsel to Plaintiffs-Appellants Sweet Harvest Foods, Export Packers Company Ltd., Honey Holding I, dba Honey Solutions, Sunland Trading Inc.

/s/ Gregory J. Spak
Gregory J. Spak
Ron Kendler
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Counsel to Plaintiff-Appellant National Honey Packers & Dealers Association

August 23, 2024

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

**CAFC Court Nos. 2024-1370, 2024-1371**

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑      the filing has been prepared using a proportionally-spaced typeface and includes 6,912 words.

☐      the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐      the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: August 23, 2024

Signature: \_\_\_\_\_/s/ Gregory J. Spak\_\_\_\_

Name: _____Gregory J. Spak\_\_\_\_\_

(Form 31)

# CERTIFICATE OF CONFIDENTIAL MATERIAL

## CAFC Court Nos. 2024-1370, 2024-1371

The foregoing document contains 18 unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☑ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.


Date: August 23, 2024          Signature:          /s/ Gregory J. Spak

                               Name:               Gregory J. Spak